## Clark, Appellant, v. Pennsylvania Power and Light Company

Argued May 8, 1939. Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

76

*H. F. Bonno,* with him *Robert M. Fortney,* for appellant.

*J. A. Welsh,* with him *Charles E. Green,* for appellee.

OPINION BY MR. JUSTICE BARNES, June 19, 1939:

This action is in trespass for alleged negligence in setting fire to and destroying plaintiff's tavern, and, on this appeal, plaintiff asks us to reverse the judgment non obstante veredicto entered in favor of defendant by the learned court below following the jury's award of $8,000 damages to plaintiff.

It appears from the evidence, viewed in the light most favorable to plaintiff, that about a year prior to the fire plaintiff had converted a rough lumber hay barn into the tavern, which was lighted by electricity furnished by defendant. Plaintiff's property was situated in Ralpho Township, Northumberland County, at the extreme end of one of defendant's branch power lines. About ten of defendant's customers were served by this same line. The fire occurred early on the morning of September 14, 1936, a few hours after plaintiff and his wife had retired for the night to their brick dwelling house near by. Before leaving, plaintiff had examined his premises and noticed nothing out of order. Neighbors first observed the burning building at about half past three or four o'clock in the morning. The fire, which began in the northeast corner, spread and consumed the entire building, and communicated across the lane, totally destroying plaintiff's barn and some small farm buildings.

No one knows how the fire began. The evidence relied upon by plaintiff, as tending to establish the averred negligence, is entirely circumstantial. It was alleged that the accident was due to the unsafe condition of defendant's transformer, an instrument attached to a pole seventy-two feet from plaintiff's premises, the purpose of which was to reduce the dangerous current of electricity passing through the main wire, to a safe current for household use,—the reduction being from a voltage of 6,900 to 220. There was a ground wire installed by defendant from the transformer erected on the pole for the purpose of carrying off any excess voltage and preventing the same from entering plaintiff's property. There was also a ground constructed by plaintiff, on the inside of the building, attached to a water pipe for the same purpose.

All of the electrical appliances in the building,—the wiring, the switch box, the fuse box, the conduits and everything in connection with the electric wiring and apparatus were installed and owned by Thomas J. Clark, the plaintiff. The wires were extended from the building to defendant's meter outside, and at the meter defendant connected its wires with those of plaintiff. The latter had erected on the inside of his building a sheet metal switch box in the northeast corner of the principal room, about six and one-half feet from the floor and attached to wooden boards on the wall. Directly below this, plaintiff had installed a sixty ampere fuse box. The electric wires and appliances on the inside, and to the place where they connected with the wires of defendant on the outside, were under the exclusive supervision and control of plaintiff.

On the morning of the fire, the switch box was found by plaintiff lying about six feet from the northeast corner of the property, where it had been located. When found, it was closed. It was kept by Clark in his house for a period of nearly four months, when it was taken to Bucknell

University and there opened by Professor Joseph D. Stetkewicz.*

In calling Professor Stetkewicz, plaintiff attempted to narrow the sole possible source of the fire to the alleged defect in defendant's transformer. That witness, however, after testifying that the presence of a beaded slit in the switch box could be attributed only to the intense heat of an electric arc on the inside of the box, frankly admitted that he could not tell whether the manner in which the box was wired produced the arc and that he could not "positively swear whether the arc that was caused . . . was occasioned by some defect of the switch that occurred inside of the house, or whether it came from the outside." The fair conclusion from his testimony is that a source within the exclusive control of plaintiff might have caused the accident.

The burden rested upon plaintiff affirmatively to prove the negligence charged by showing, first, that the fire which destroyed the building was caused by electricity, and second, that it was caused by high voltage electricity escaping from defendant's feed wire and into plaintiff's building: *Seitzinger v. Burnham,* 223 Pa. 537. Instead, in attempting to meet this burden by circumstantial evidence, plaintiff expressly negatived the suggested negligence on defendant's part. One of plaintiff's own witnesses, Clarence Yeager, a lineman in defendant's employ, testified that he arrived at the fire at 6:30 a. m. He touched the transformer and it was not warm. He removed the transformer the next day from the pole, lifted the lid and looked into the transformer and "there didn't seem to be anything wrong with it." He testified that the three ampere fuse on the service line was one mile away, but that the distance of the fuse from the transformer made no dif-

---

* Professor Stetkewicz testified that he was an assistant professor in chemical engineering, specializing in metallurgy, at Bucknell University.

ference in so far as the safety of the circuit was concerned. His testimony, in connection with that of certain of plaintiff's neighbors, indicates that the circuit was in perfect order and the lights of the other customers on the line still functioned properly for some time after the fire had started. It was as a result of the fire that wires near the Clark farm, which were burnt and hanging down, became entangled, producing a short circuit and interrupting the service of the customers on the branch line.

Harry Schreffler, an electrician, called by plaintiff, stated that he did not know whether there was a defect in the transformer, inasmuch as he had not seen or examined it. He testified, however, that the indications were that it was defective. His testimony is well summarized by the learned trial judge: "He further testified if there was a ground at the pole, the current would ground at the pole; it would not get into the house. Later, he stated, regardless of the ground at the pole, and the ground at the house, the current would get into the house. However, an examination of his testimony discloses the witness had in mind the ground testified to was defective or no good. Witness assumed the ground at the pole was defective." Therefore, the value of this witness's testimony rests upon the premise that the ground at the pole was ineffective, coupled with the further assumption that the transformer, which the witness had never seen, was defective and that electricity caused the fire. Plaintiff produced no evidence to substantiate such assumptions, with the result that any inference drawn therefrom by plaintiff's witnesses is worthless as evidence, and is at the most a mere guess or conjecture: *Lithgow v. Lithgow*, 334 Pa. 262; *Monahan v. Seeds & Durham*, 336 Pa. 67.

Having failed to adduce any affirmative evidence to prove the negligence charged, plaintiff seeks to invoke the doctrine of res ipsa loquitur to establish his case. This he cannot do. We recently restated the law on

this subject in *Norris v. Phila. Electric Co.*, 334 Pa. 161. and our rulings there are controlling here. We there held that for the application of the res ipsa loquitur rule, page 165, "It is essential that it shall appear that the transaction in which the accident occurred was in the exclusive management of the defendant, and *all the elements of the occurrence within his control,* and that the result was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than negligence. *If there is any other cause apparent to which the injury may with equal fairness be attributed, the inference of negligence cannot be drawn.*" As was pointed out by the court below: "There was no testimony with relation to the condition of the wiring in the house or switch box." In this connection we said in the Norris case, supra, page 164, ". . . where there is an instrumentality over which plaintiff had complete dominion intervening between the alleged cause and the injury, plaintiff must show by evidence that there was no defect in his appliance before the doctrine will be held to operate. . . . Where there is the possibility that an appliance within plaintiff's control brought about the injury and plaintiff does not narrow the only possible source of the harm down to an instrumentality within the exclusive control of the defendant, the doctrine of res ipsa loquitur does not apply."

Under these circumstances the action of the learned court below in entering judgment n. o. v. was entirely proper.

Judgment affirmed.