Fay *v.* 900 North 63d Street Corporation,
Appellant, et al.

Argued October 5, 1939.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES
and HIRT, JJ.

*Richard A. Smith,* with him *Louis Wagner* and *Thomas J. Clary,* for appellant.

*Joseph M. Smith,* with him *Joseph Neumann Smith,* for appellee.

OPINION BY STADTFELD, J., November 22, 1939:

This is an action in trespass for personal injuries received by plaintiff from a fall on the steps of an apartment house. The case was tried before BOK, J. J., without a jury. The court found in favor of the plaintiff in the sum of $1,750.

The defendant filed exceptions to the court's finding which were dismissed and judgment entered.

The statement of claim alleged that while plaintiff was leaving defendant's apartment house at 12:30 A. M. on March 26, 1938, she fell on the steps of the same, and that defendant was negligent in that the ceiling light of the porch had been extinguished and there was no protecting railing.

The affidavit of defense alleged that the plaintiff left by an entrance other than the regular entrance provided for guests of the apartment.

From the record, the following facts appear: The apartment house, known as the Overbrook Gardens is a large, four-story apartment house with its main entrance on 63d Street. The entrance is into a vestibule, and from there to a lobby, out of which by halls and elevators, tenants reach their apartments on the first and other floors. The vestibule is open and in it are call phones. The use of the phone rings the individual's apartment, and the apartment occupant, by the press of

a button, can open the door to the lobby, which admits a guest into the apartment house. The outside 63d Street entrance, the vestibule, the lobby and the halls leading to the lobby are kept lighted all night long.

A side entrance, which is the one involved in this accident, is on Jefferson Street. The tenant is given a key to this entrance door. There are no call phones or bells and a guest can only enter by a tenant unlocking the door and admitting her. The steps at the side entrance are two, a landing, and then two more.

About 10 :00 P. M., the plaintiff, with her sister, came to the side entrance and attracted the attention of a tenant, Miss Krauss, by calling up to her window, after which she came down to the door, unlocked it and admitted them. The lights on the porch and the outside pillars gave them sufficient illumination to see their way and the steps on which they entered.

The plaintiff, her sister and a friend, left the apartment house about 12 :30 A. M. by the Jefferson Street side entrance. The porch light was out. The plaintiff was an old lady of 68 years of age and had never been in the apartment house before. Her sister and friend had visited previously. Although warned by the others to be careful, she came out of a brightly lighted apartment and immediately passed down the steps first, without asking for aid or lights, facilities for which were available, and fell because she could not see the outline of the steps so as to determine the width of the same.

Defendant did not know of the accident until nine days later, and there was no evidence of knowledge of or cause of the light being out.

Plaintiff's statement bases the right of recovery upon two grounds, (a) improper construction of the steps in failing to erect proper railings, and (b) failing to provide proper lighting for said steps and negligently turning off or permitting to be turned off, such lights as were provided for that purpose. The second ground

is the sole basis on which appellee relies for recovery.

The testimony indicates that the porch light was on when the plaintiff entered the apartment about 10:00 o'clock P. M., but was not on when she left at about 12:30 A. M. in the early morning. The record is devoid of any evidence of when the light went out or what caused it to be extinguished. Was there any evidence which supports a charge of negligence against the defendant, and secondly, did the testimony disclose any contributory negligence on the part of plaintiff?

The side, or rear entrance, is shown in Exhibits 3, 4 and 5. This entrance is not for the general public. It is kept locked all the time. There is no bell, nor any communications with the apartments in the building. The tenant is furnished a key for his or her personal use, and a visitor could only be admitted through this entrance by some way attracting the attention of an occupant of the apartment and having them unlock the door for their admission.

Plaintiff knew this was not the main entrance. In her testimony, she speaks of it as the *side* or *back* entrance. When she reached there she knew that the entrance had no means of communication with the occupants of the apartments. Miss Krauss, the hostess, says when the plaintiff came to the side entrance she called up to her apartment and Miss Krauss came down and let her in. The plaintiff says that she waited outside and that Miss Krauss' window was above the entrance and that Miss Krauss saw them there and came down and let them in.

There is no evidence that the defendant knew that the side entrance was being used by visitors entering the apartment house. The only evidence in respect thereto is a question by the court and answer by Miss Krauss: "Q. Do you know whether any members of the general public use the Jefferson exit? A. No, I don't know. I don't know but I have seen people,"

The defendant is not an insurer of the safety of the plaintiff. It was only obligated to furnish a safe way of entrance and exit from the apartment building, which it did, a way which was not only available but which was kept lighted for use at all times during the night or day. It was not obliged to keep accessible to the public all entrances to the apartment at the late hours of night or the early hours of morning, especially when those entrances were kept locked, without connection with the apartments, and there being no evidence of defendant's knowledge that the same were being used by guests of the apartment building.

In *Mitchell et ux. v. Geo. A. Sinn, Inc.*, 308 Pa. 1, 161 A. 538, the facts were as follows: In the dark, plaintiff attempted to enter the premises of a tenant to purchase coal. She came to the front entrance, and as the floor was being painted, was directed to the rear and on the way fell because of a defect which was alleged to be traceable to the owner, the defendant. The Supreme Court said, on p. 6: "If, because of relationship, appellee entered by invitation, expressed or implied, a more modified rule applies and her rights are higher than those of a mere licensee. But even so, 'The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers': 45 C. J. 837; *Kapuscianski v. Phila. & R. C. & I. Co.*, 289 Pa. 388. An owner in possession, or a tenant as occupier, is not required to have his premises in such condition that no accident could possibly befall a person entering ...... (p. 8). There is nothing in the record from which it might be

inferred that the landlord had reason to believe from the knowledge which he had that the condition existing on the premises would be dangerous to life or limb since it could not reasonably have been foreseen that such injuries would result from the defect; the landlord under such circumstances could not be said to be negligent."

The negligence defendant is charged with by plaintiff, is the lack of a light on the porch at time of leaving, 12:30 A. M., sufficient to illuminate the steps so as to permit the plaintiff to descend.

The defendant is not an insurer and is only liable for its negligence. If there is a temporarily changed condition, which may arise from causes other than defendant's negligence, then there must be some evidence of the defendant's fault for the change or notice thereof through lapse of time or otherwise.

At 10:00 P. M., when the plaintiff used this entrance, the porch light was lit and gave sufficient illumination to enable her to see the steps. When they left, at 12:30 A. M., the porch light was out. There was no evidence as to the cause of the light being out or as to the length of time it was out. It may have been turned out or the globe may have burned out. It may have been out two and a half hours or it may have been out five minutes.

In *Bremer v. W. W. Smith, Inc.,* 126 Pa. Superior Ct. 408, 191 A. 395, the facts were as follows: In this case, the plaintiff stepped into a hole in the floor of a parking lot operated by the defendant. The court held the mere happening of the accident did not place the liability upon the defendant; that the doctrine of res ipsa loquitur has no application and that there must be evidence that the defendant either had actual notice of the hole or that the defective condition had existed long enough to bring constructive notice home to the defendant.

In *McDonald v. Gimbel Bros., Inc.,* 321 Pa. 25, 183 A.

804, the plaintiff slipped on the floor of the defendant's store.. It was held that a non-suit was properly entered where plaintiff testified that her fall was due to the presence of oil on the floor which she had not noticed before slipping, but detected when she got up, where there is no evidence to show how the oil got on the floor or how long it had been there.

The court below, in its opinion holding the defendant responsible without proof of the cause of the porch light being out and notice to the defendant of the same, said that the defendant became responsible because of a failure to offer testimony in explanation thereof. The defendant, according to the testimony, had no notice of the accident until nine days after its occurrence. The burden was upon the plaintiff to prove that this light was out through the negligence of the defendant. There is no evidence that the switch to the porch light was solely available to the defendant, and common experience establishes that light may be extinguished other than by being turned off. It is a well known fact that lights are extinguished frequently by globes burning out, by fuses burning out and by outside interference with electrical currents.

In *Stearns v. Spinning Co.*, 184 Pa. 519, 523, 39 A. 292, the Supreme Court said, "Excepting where contractual relations exist between the parties, as in the case of carriers of passengers and some others, negligence will not be presumed from the mere happening of the accident and a consequent injury, but the plaintiff must show either actual negligence or conditions which are so obviously dangerous as to admit of no inference other than that of negligence."

In *Bechtel v. Franklin Trust Co.*, 120 Pa. Superior Ct. 587, 182 A. 800, this court, in an opinion by Judge JAMES, said, at p. 592: "Appellant ably argues that the rule of law applicable to the present facts is 'when the thing which causes the injury is shown to be under the management of the defendants and the accident is such

as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care': *Shafer v. Lacock, Hawthorne & Co.,* 168 Pa. 497, 504, 32 A. 44; *Maltz v. Carter,* 311 Pa. 550, 166 A. 852. Upon an examination of many cases in our courts where this rule has been adopted, we fail to find any case where it has been applied in an action for injuries suffered by an invitee as a result of the condition of the premises."

The court below relied upon the case of *Cathcart v. Sears Roebuck & Co.,* 120 Pa. Superior Ct. 531, 183 A. 113. That case is entirely different from the instant case. The accident happened while the store was open for business. The runway used by the plaintiff was a portion of the exit from the store and was at the time being used by other customers. Not only was the light out but there was no globe in the socket for the use of the light.

In the instant case, the plaintiff was an aged lady of sixty-eight years. She entered by the Jefferson Street entrance. It was sufficiently illuminated to enable her to see her way and she was aware that she came up first two steps, crossed a landing, and then went up two steps more to the porch.

As she came to this entrance, she knew it was not the main entrance as there was no method of communication with the apartments and the entrance could only be gained by calling up to the window of her hostess or attracting her attention.

As she came out of the Jefferson Street door at 12:30 A. M., she came from an apartment house which she had visited for the first time, the inside of which was brightly lighted, started right down the steps, ahead of any of the party in spite of the fact that she had been warned by her friend, Miss Flood, to be careful of her step, and without seeking help or light and although

as she went down the steps the darkness was such that she could not see the width of the same. Quoting from her testimony: "Q. Now, when you saw it was dark, did you ask anybody to help you down the steps? A. No. Q. But it was so dark you couldn't see the width of the steps? A. That's right ...... Q. It was so dark you couldn't see the width of the steps? A. I say it was light enough for me to see steps were there but not the width."

The hostess had telephone connection with the janitor's headquarters so if the plaintiff had asked for more illumination, it could have been available and the hostess could have also directed her to the main entrance which is lighted throughout the night.

The plaintiff's negligence was in descending a step which she had previously ascended, without seeking aid or a lighted way, which was available to her, when the illumination on reaching there was insufficient for her to observe the width of the steps she was descending.

In *Hardman v. Stanley Co. of America,* 125 Pa. Superior Ct. 41, 189 A. 886, recovery was refused plaintiff in a case where she came to a darkened aisle, with which she was unfamiliar, and attempted to enter it without waiting for an usher to assist her and until the lighting was such that she could, with reasonable safety, proceed to a seat.

In *Davis v. Edmundson,* 261 Pa. 199, 104 A. 582, plaintiff fell from a platform adjoining a rear hall, which platform he could not see the ends of. Recovery was refused.

In *Smalley v. First National Bank of Wilkinsburg,* 86 Pa. Superior Ct. 280, the plaintiff went up a stairway to a bank and came down when she could not see the outline of the steps on the unlighted stairs, and fell. Recovery was refused.

In *Conboy v. Osage Tribe No. 113,* 288 Pa. 193, 135 A. 729, the plaintiff came out of a lodge room onto an unlighted stairs, the steps of which he could not see.

He called for a janitor. The court held that it was his duty to have retraced his steps to the lodge room and asked for light.

In *Hoffner v. Bergdoll*, 309 Pa. 558, 164 A. 607, plaintiff fell into an elevator shaft because he could not see the outline of the same on account of the darkness. Recovery was refused. See also, *Modony v. Megdal*, 318 Pa. 273, 178 A. 395; *McVeagh v. Bass*, 110 Pa. Superior Ct. 379, 168 A. 777.

According to plaintiff's testimony, before she entered upon the steps, the darkness was of sufficient density so that she could not see the outlines of the same. She saw fit to test a known danger and consequently, was guilty of contributory negligence which bars a recovery.

The assignments of error are sustained, judgment reversed and now entered for defendant.