SIEROCINSKI v. E. I. DU PONT DE NEMOURS & CO.

No. 7533.

Circuit Court of Appeals, Third Circuit.

March 5, 1941.

As Amended on Denial of Rehearing

April 1, 1941.

See, also, D.C., 25 F.Supp. 706; 3 Cir., 103 F.2d 843.

C. Brewster Rhoads, of Philadelphia, Pa. (Montgomery & McCracken, of Philadelphia, Pa., of counsel, Abel Klaw and Peter B. Collins, both of Wilmington, Del., and Samuel Fessenden and Laurence H. Eldredge, both of Philadelphia, Pa., on the brief), for appellant.

Robert C. Fable, Jr., of Philadelphia, Pa. (Raymond A. White, Jr., of Philadelphia, Pa., on the brief), for appellee.

Before MARIS, CLARK, and JONES, Circuit Judges.

JONES, Circuit Judge.

The plaintiff, Sierocinski, suffered serious personal injuries through the untimely explosion of a fuse cap of a kind ordinarily used to detonate dynamite charges. He instituted suit for damages against the defendant, the manufacturer of the cap, and obtained a jury's verdict. From the judgment entered on the verdict, the defendant appeals, contending that the plaintiff failed to show that his injuries were the result of negligence on the part of the defendant and that the trial court erred, therefore, in refusing the defendant's request for a directed verdict and in dismissing its motion for judgment n. o. v.

Viewed in the light most favorable to the plaintiff, as the implication of the jury's verdict requires (Delaware & H. R. Corp. v. Bonzik et al., 3 Cir., 105 F.2d 341, 344; Baltimore & O. R. Co. v. Muldoon, 3 Cir., 102 F.2d 151, 152; Harris v. Reading Co., 325 Pa. 296, 300, 189 A. 337), the material facts are as follows.

The plaintiff, an experienced quarryman, had charge of the blasting in a quarry operated by his employer, Ehret Magnesia Company, at Valley Forge, Pennsylvania. On the morning of his injury (September 24, 1936) the plaintiff, following his usual practice, had taken seven or eight fuses ($3\frac{1}{2}$ to 4 feet long) and a box containing some fuse caps from the separate magazines maintained for their storage some 600 to 800 feet distant from the quarry. He carried the caps and fuses to the quarry, where he placed them on the top of the "day magazine",—a wooden box about $2\frac{1}{2}$ feet square and several feet high, which was used for the temporary storage of blasting materials near the face of the quarry.

The caps, which consisted of hollow cylinders made of a copper alloy, closed at one end, were $1\frac{1}{4}$ inches long and about $\frac{1}{4}$ inch in diameter at the open end. Inside of the cylinder and seated against the closed end was a metal capsule $\frac{7}{8}$ inch long which contained a high explosive. The fuses resembled light rope or cord and were of a diameter slightly less than the diameter of the caps so that an end of a fuse could be inserted in a cap.

The plaintiff capped the fuses and, as he did so, he laid them back on top of the "day magazine" preparatory to crimping the caps. This operation is performed in order to prevent a fuse and its cap from becoming disengaged and is accomplished

by means of a metal instrument, which resembles a pair of narrow pliers and which is intended, when manually applied, to squeeze or compress the outer or open end of the cap against the encased fuse. According to the plaintiff, in crimping the caps, he held a fuse in his left hand with the base or closed end of the cap pointing upward and the fuse downward and, with his right hand, applied the crimping iron to the lower or open end of the cap. He testified that while performing the crimping operation in a careful and proper manner, just as he had done with safety many times before, the fifth or sixth cap exploded, while being crimped, causing the injuries for which he claims damages.

The caps, which had been manufactured by the defendant, had been obtained by the plaintiff's employer from an independent distributor of blasting materials who, either mediately or immediately, had obtained them from the defendant. The caps, as packed by the defendant, came in boxes of 100, and purchases thereof by the Magnesia Company were made from the independent distributor about four times a year in lots of 1000 to 2000 caps at a time. Upon the Magnesia Company's receipt of a supply of caps, they were placed in the storage magazine under the control of the plaintiff, who took caps therefrom as needed for his blasting work at the quarry. The evidence does not disclose how long before the accident the caps which the plaintiff was using had left the control of the defendant, when they had been purchased by the plaintiff's employer, or when or from whom they had been received by the distributor. But, the testimony did show that the box from which the plaintiff had extracted the particular caps on the day of the accident had been opened several days prior thereto and still had some caps remaining in it after the plaintiff had taken out the seven or eight then needed. The custody and use of the blasting caps was under the exclusive control and supervision of the plaintiff at the time of the accident and had been from the time his employer purchased them.

This is not a case of an employer's liability to his employee for an injury received in the course of employment. Presumably that liability has been discharged. The docket entries show that the Ehret Magnesia Company (the plaintiff's employer) petitioned the court below to have the plaintiff's judgment against the defendant marked to the use of the Magnesia Company. The present suit is against a party foreign to the plaintiff's employment.

 Negligence is the basis of the plaintiff's action. His right to a recovery depends upon his ability to prove the defendant's breach of a duty as being the proximate cause of his injury. The duty which the defendant owed to the plaintiff is the same which each of us owes to all others, namely, to exercise reasonable care under the circumstances. This was none the less true even though the article manufactured and sold by the defendant was an explosive. Amsterdam v. E. I. DuPont de Nemours Powder Co., 62 Pa.Super. 314, 324.

The negligence alleged by the plaintiff was the defendant's manufacture and distribution of a dynamite cap said to be incapable of withstanding the crimping to which, as the defendant knew, it would be subjected and that the defendant knew or should have known that the cap would explode upon being crimped. However, the testimony offered by the plaintiff went no further than to identify the cap as one which the defendant had manufactured, to describe the explosion, and to affirm that the plaintiff was performing the crimping in a proper and careful manner and that he had not tampered with or altered the cap prior thereto. No proof, however, either direct or circumstantial, was adduced to support a finding of any of the specific acts of negligence alleged. As the learned trial judge observed in his charge to the jury, "the plaintiff has not produced any affirmative evidence before you of what that negligence is that he charges or what that defective or improper construction is."

None the less, the court submitted the case to the jury upon the theory that "there are cases in which a jury may, if they see fit, draw an inference of negligence or find evidence of negligence from the circumstances of the accident; and * * * [that] this is one of those exceptional cases". In so doing, the trial court studiously refrained from applying the rule of res ipsa loquitur, eo nomine. But, regardless of terminology, the submission of the case on the basis of the plaintiff's limited proofs actually permitted the jury to infer negligence from the happening of the accident without more.

 While an application of res ipsa loquitur relates to trial procedure in its shifting of the burden of going forward

with the evidence, the question of the sufficiency of the evidence to take the case to the jury may depend upon whether or not res ipsa loquitur is applicable under the peculiar circumstances of the given case. In such instance, the substantive right is so exclusively dependent upon the proof supplied by the application of the rule that it would seem that the applicability of the rule in a federal court should be determined by the local law in keeping with the spirit of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. See Stoner v. New York Life Insurance Co., 61 S.Ct. 336, 85 L.Ed. —.

In Pennsylvania, where the accident occurred, the duty rests upon a plaintiff in an action for negligence to prove the allegation thereof either directly or by proof of circumstances from which an inference of the ultimate fact of negligence may reasonably be drawn. Foster et ux. v. Borough of West View, 328 Pa. 368, 370, 195 A. 82; Fisher v. Pomeroy's Inc., 322 Pa. 389, 390, 391, 185 A. 296; Wright et al. v. Straessley, 321 Pa. 1, 5, 182 A. 682; Rose v. Adelphia Hotel, 300 Pa. 1, 3, 149 A. 644. And, ordinarily, the requirement of such proof cannot be met by an inference of negligence drawn from the mere happening of an accident. Conway et al. v. Philadelphia Gas Works Co., 336 Pa. 11, 14, 7 A.2d 326; Hulmes et al. v. Keel, 335 Pa. 117, 119, 6 A.2d 64; Brooks v. Morgan, 331 Pa. 235, 239, 200 A. 81; Kallish v. American Base Ball Club of Philadelphia, 138 Pa.Super. 602, 605, 10 A.2d 831. In certain cases, however, because of the peculiar circumstances attending the happening of the particular accident, the burden usually resting upon a plaintiff, of going forward with the evidence, is eased by an application of Pennsylvania's own doctrines of (1) res ipsa loquitur or (2) the inference of negligence permissible from a defendant's exclusive control of the instrumentality which inflicts the injury. See Fitzpatrick v. Penfield, 267 Pa. 564, 577, 578, 109 A. 653. The present question, therefore, is whether the plaintiff made out a case which called for an application of either of the exceptional rules whereby the burden of carrying the evidence thenceforth would be shifted to the defendant. In our opinion, the pertinent local law answers the question in the negative.

The rule of res ipsa loquitur has been limited in its application by the courts of Pennsylvania to cases involving injury to passengers through the transportation operations of common carriers or to patrons of utilities dispensing a service which, if not properly managed and controlled, may readily prove dangerous. See Burns v. Pennsylvania Railroad Co., 294 Pa. 277, 144 A. 103; Delaney v. Buffalo, Rochester & Pittsburgh Ry. Co., 266 Pa. 122, 109 A. 605; Wood et al. v. Philadelphia Rapid Transit Co., 260 Pa. 481, 104 A. 69, L.R.A.1918F, 817; Delahunt v. United Telephone & Telegraph Co., 215 Pa. 241, 64 A. 515, 114 Am.St.Rep. 958. Cf. DuPont v. Pennsylvania Railroad Co., 337 Pa. 89, 91, 10 A.2d 444, 129 A.L.R. 1337. Notwithstanding that an action for injury is founded upon negligence, it has been held that a contractual relation between the parties is essential to an application of res ipsa loquitur. Stearns v. Ontario Spinning Co., 184 Pa. 519, 523, 39 A. 292, 39 L.R.A. 842, 63 Am.St.Rep. 807; see Fay v. 900 North 63d Street Corporation, 137 Pa.Super.Ct. 496, 512, 9 A.2d 483. We have not been referred to any Pennsylvania case in which res ipsa loquitur has been applied other than in the circumstances already specified. Being in derogation of the general principal that "the negligence charged must be established by evidence", the rule has been thus narrowly restricted in its application. Norris v. Philadelphia Electric Co., 334 Pa. 161, 163, 5 A.2d 114, 115. The rule was, therefore, clearly not applicable to the facts of the instant case where neither the circumstances nor the relation of the parties essential to its application was present.

The Pennsylvania doctrine which permits an inference of negligence from a defendant's exclusive control of the instrumentality inflicting the injury comes close to being res ipsa loquitur. But, even under that rule, "the happening of the accident affords an inference that it was from want of due care", in the absence of explanation by the defendant, only "where the circumstances are free from dispute and were under the exclusive control of the defendant * * *." Fitzpatrick v. Penfield, 267 Pa. 564, at page 577, 109 A. 653, at page 658, citing cases; Maltz v. Carter, 311 Pa. 550, 553, 166 A. 852, and cases there cited; Shafer v. Lacock, Hawthorne & Co., 168 Pa. 497, 504, 32 A. 44,

29 L.R.A. 254. Here, the defendant was not in control of the instrumentality which inflicted the injury. The custody and manner of using the cap was in the exclusive control of the plaintiff. While the defendant's manufacture of the cap was admitted, what the circumstances of its storage and care had been from the time it left the defendant's possession until the plaintiff's employer purchased it was not traced. Proof of manufacture was not sufficient to impute continued control to the defendant. See Zahniser et al. v. Pennsylvania Torpedo Co. Ltd., 190 Pa. 350, 353, 42 A. 707. In fact, the plaintiff's proof did not exclude the possibility of intervening fault (occurring between the time the Magnesia Company received the cap and the time the plaintiff took it from the storage magazine for use) for which the defendant would not be responsible. What the Supreme Court of Pennsylvania said in Rucinski v. Cohn, 297 Pa. 105, 114, 146 A. 445, 448, where the defendant was out of control of the instrumentality, is apposite here, "it would extend the rule of responsibility to unwarranted lengths and make it virtually that of res ipsa loquitur to sustain a recovery under the facts as here shown."

But even if the evidence warranted a finding that the defendant's original control had been unbroken down to the time of the accident, neither the rule of res ipsa loquitur nor the doctrine of exclusive control was available to the plaintiff. There is evidence in the plaintiff's case from which it could be reasonably inferred that the accident happened in a manner for which the defendant was not blameable. One of the plaintiff's witnesses, who was 50 to 75 feet from the scene at the time of the accident, testified that there were two explosions. Another witness, who came to the scene immediately after the accident, testified to finding the crimpers undamaged lying on the top of the "day magazine" and also some cut fuses; that he found three fuses with exploded caps and a like number with unexploded caps hanging on nearby bushes; that physical evidences of the explosion were found on the ground 9 feet from the "day magazine"; and that the plaintiff had then said that he had had seven or eight fuse caps in his hand just prior to the accident. The plaintiff himself testified that the great toe of his left foot was blown off although protected by a heavy working shoe and that he also suffered injuries to his legs, chest, arms, throat and face. In these circumstances, an inference that the accident was precipitated by the plaintiff's stepping upon a cap. while bending over to recover some dropped caps would not have been unreasonable. The matter for consideration in this connection is not the choosing of one inference against another. Credibility is not for the court. The thing of importance is that an inference exculpating the defendant from guilt could also be reasonably drawn from the evidence. That, of itself, is sufficient to prevent the application of res ipsa loquitur or the doctrine of exclusive control. As was said in Coralnick v. Abbotts Dairies, 337 Pa. 344, 345, 11 A.2d 143, 144, "There being causes apparent, other than those within defendant's control, to which the accident might with equal fairness be attributed, the doctrine of res ipsa loquitur does not apply." And, the same has been said as to the inapplicability of the doctrine of exclusive control. Zahniser et al. v. Pennsylvania Torpedo Co. Ltd., supra, 190 Pa. at page 353, 42 A. 707. See also Norris v. Philadelphia Electric Co., supra, 334 Pa. at page 165, 5 A.2d 114, and Clark v. Pennsylvania Power & Light Co., 336 Pa. 75, 80, 6 A.2d 892.

The appellee complains that the testimony appearing in the plaintiff's case with respect to the physical conditions at the scene of the accident to which we have just referred was elicited as the result of an over-extended cross-examination by defendant's counsel to which the plaintiff had objected. The trial judge overruled the objection and, from the record, it appears that the plaintiff acquiesced in the ruling. In any event, it was not error for the trial court to permit the cross-examination. The witness, who had been produced by the plaintiff, testified on direct examination to facts concerning the custody of the caps after purchase thereof by the Magnesia Company. Obviously, this was intended to aid in a finding of the control which the plaintiff sought to visit upon the defendant. Cross-examination, therefore, with respect to relevant and material facts, known to the witness, concerning the circumstances of the accident, which were capable of supporting an inference that the accident may have happened unaffected by any control of the defendant was not improper. It is of the office of cross-exam-

ination to appraise the weight, if any, to be ascribed to the inferences to be drawn from a witness' testimony.

The appellee's further complaint that the particular witness, although called by the plaintiff, was hostile to him lacks present materiality. The question for the court is not what credit should be given to any particular testimony in the plaintiff's case but what inferences might be drawn therefrom if believed by the jury.

The appellee argues on this appeal, apparently for the first time, that the judgment may be sustained on the basis of a breach of warranty by the defendant. Aside from no relation having been shown to support a warranty by the defendant in favor of the plaintiff, the case was pleaded, tried and submitted on the ground of alleged negligence. The plaintiff having failed to sustain the burden of proving negligence either directly or circumstantially, the defendant was entitled to an affirmance of its request for a directed verdict.

The judgment for the plaintiff is reversed and the cause remanded to the District Court for further proceedings not inconsistent with this opinion.