Opinion by
Montgomery, J.,
The employer and its carrier have appealed an award of compensation for total disability resulting from injuries sustained by claimant as a result of an accident occurring on November 21, 1958. This was the third accident sustained by this claimant. He had, a previous one on December 1, 1954, while in the employ of this same employer and another one four years earlier, the details of which are not disclosed by the record. Although the award before us is based on the 1958 accident, the results of the other two are important in the disposition of the issues now before us.
The two questions before us are: (1) Was the claim filed in time? (2) Does the record support an award for total disability as a result of the accident of November 21, 1958?
(1) Timely Filing
Following the accident of November 21,1958, claimant entered the Presbyterian Hospital on November 24, 1958, and remained there until December 10, 1958. Upon leaving the hospital, he returned to his employment ; but he was given lighter work. He continued to work sporadically until May 13, 1959, on which day he entered the Veterans Hospital, where on June 19, 1959, he underwent an operation for a herniated disc (nucleus pulposis at L4 and L5 and at L5 and SI). He never returned to work after May 13, 1959.
The compensation authorities found, and the lower court affirmed, “That by making payment to the claimant of full wages from the time of the accident November 21, 1958 to June 26, 1959, during part of which period no services were performed by the claimant, the defendant employer unintentionally lulled the claimant into a sense of security culminating in the filing *619 of the instant petition eight days beyond the statutory limitation of 16 months.”
Although the board found that claimant had been paid his full wages by his employer from November 21, 1958 to June 26, 1959, this is not entirely supported by the record. Claimant admitted that he had not been paid during his eighteen day confinement in the . Presbyterian Hospital:
“Q. You lost no pay from the time , of this accident in December, ’54 up until the time you went into the hospital on May 13, ’59; is that correct, isn’t it?
“A. Well, when I went in the Veterans — the Presbyterian Hospital, they didn’t pay me for the time I was in there. For the time I was in, they didn’t pay me for the time I was in the Presbyterian Hospital.
“Q. In the hospital itself?
“A. Yes, they didn’t pay me.
“Q. That was that eighteen day period?
“A. Yes.
“Q. Aside from that, you were paid straight through as I understand it?
“A. Yes.”
However, there is testimony to support the finding that he was paid for all other lost tiine, including the time he was confined in the Veterans Hospital from May 13, 1959, until June 26, 1959.
Under section 315 of the Workmen’s Compensation Act, as amended February 28, 1956, P. L. (1955) 1120, §1, 77 P.S. 602, the time during which a petition for compensation may be filed does not begin to run until sixteen months after the date of the most recent payment, “Where . . . payments of compensation have been made . . .” The meaning of this provision has been before us many times and we have held consistently that, although payments for services rendered do not extend the statutory period for filing petitions, payments which were intended to compensate for loss of earning *620 power have that effect. Schrecengost v. O. K. Heilman Trucking Company, 174 Pa. Superior Ct. 299, 101 A. 2d 417 (1953); Hickey v. Cudahy Packing Company, 153 Pa. Superior Ct. 45, 33 A. 2d 285 (1943); Somerton v. The Bell Telephone Co. of Pa., 111 Pa. Superior Ct. 264, 169 A. 579 (1933); Alex Hunter v. John G. Mailey and Fidelity & Casualty Company, 91 Pa. Superior Ct. 350 (1927).
Although there may be room for dispute as to the purpose and effect of those payments to claimant made during the period he was back at work, working irregularly and doing lighter work, there can be no dispute as to the payments made to him after May 13, 1959, when he entered the Veterans Hospital, until June 26, 1959, when his payments ceased. These were of a gratuitous nature since he did not work or earn any wages during this period. For this reason alone we must conclude that there is sufficient evidence to support the conclusion that the petition in this case was filed within the time allowed by the statute. The payment of full wages during the period of hospitalization was not for services rendered and, under the aforesaid decisions, it may be considered as payment of compensation. Also see Creighton v. Continental Roll & Steel Foundry Company, 155 Pa. Superior Ct. 165, 174, 38 A. 2d 337, 341 (1944), wherein this Court, speaking through its President Judge Kelleb, said: “It is only where the employee is not totally disabled and actually performs some labor for which he is paid wages or salary (Chase v. Emery Mfg. Co., 271 Pa. 265, 268-9, 113 A. 840; Hickey v. Cudahy Packing Co., 153 Pa. Superior Ct. 45, 33 A. 2d 285) that such payments will not extend the time within which the claim petition must be filed or discharge the employer’s liability for compensation for the weeks in which its payments equaled or exceeded the compensation payable,” and *621 Vanino v. Textile Machine Works, 183 Pa. Superior Ct. 181, 130 A. 2d 203 (1957), affirming it.
(2) Total Disability as Result of 1958 Accident
The referee’s findings as to disability and cause, which were affirmed by the board, are as follows:
“That as a result of this occurrence the claimant suffered re-aggravation of a preexisting condition of Osteoarthritis which had already been aggravated by the accident of December 1, 1954 described in the compensation agreement as the result of- a twist of his back while operating a suction hose to gather leaves on a leaf loader; in addition to the aforementioned injuries the claimant also suffers as a result of the accident of November 21, 1958 chronic left hip disease, possible disc herniation, herniated nucleus pulposis, for which he was operated upon at the Veterans Hospital, and which condition will require further surgery in the future.
“That as a result of this occurrence the claimant became totally disabled on November 21, 1958, and remained in that condition up to and including the time of the hearing, and may be so disabled for some indefinite time in the future.”
Appellants do not seriously question these findings except in the particular that the injuries and disability therefrom were the result of the accident occurring on November 21, 1958. They contend that the record “clearly establishes that claimant’s disability was solely attributable to an accident, which allegedly occurred December 1, 1954.”
The fact that claimant had the prior accident is not denied because he entered into a compensation agreement as a result of it, received benefits from December 10, 1954 to December 17, 1954, and signed a final receipt December 17, 1954, when he returned to work; *622 nor is there any question that at the time of the hearing claimant was totally disabled, although there is a serious question whether such disability existed for the entire period from November 21, 1958, until May 13, 1959. However, the answer to the question of cause is not so clear; and claimant has added greatly to this uncertainty by the filing of other petitions in which he alleged that the 1954 accident was the cause of his disability.
On September 21, 1959 (ten months after the 1958 accident), claimant filed a claim petition (No. 156,-643) and a petition to review (No. 119,059) based on the accident of December 1, 1954. In his claim petition he alleged, “I was disabled since this accident” and “I have not returned to work at my previous occupation and at my former wages which were $61.60.” In his petition to review, in referring to his compensation agreement, he alleged, “Paragraph 11 avers that claimant returned to work 12-17-54 whereas the truth of the matter is that claimant has never actually returned to work since the happening of this accident [12-1-54].” No mention was made in either petition of an accident occurring on November 21, 1958.
Later, on March 29, 1960, the present petition (No. 159,542) was filed by which claim was made for compensation by reason of the accident on November 21, 1958, causing the following injuries, “The nature and cause of the injury was: twisted his back and injured his back and right hip, and aggravated a pre-existing condition resulting from an accident which occurred on 12-1-54.” In answer to this new claim petition, appellants denied that an accident causing any disability had occurred on November 21, 1958, alleged that said new petition was a subterfuge to avoid the running of the Statute of Limitations on Claim Petition No. 156,-643 and Review Petition No. 119,059, and pleaded the Statute of Limitations as a bar.
*623 Claim Petition No. 156,648 was dismissed because there had been a compensation agreement and a final receipt. Review Petition No. 119,059 was dismissed not only because claimant failed to establish that any errors existed therein or that claimant’s disability due to the accident of December 1, 1954, increased or recurred, but also because, if the petition is treated as one to set aside the final receipt, two years had gone by.
Since the award now before us is based solely on the petition filed March 29, 1960, for the 1958 accident, the crucial issue is whether or not the accident of November 21, 1958, is the cause of claimant’s present disability. Although appellants denied that there had been an accident on November 21, 1958, they do not raise that question in this appeal. Therefore, we must consider the 1958 accident to be an established fact. However, we do not say that claimant’s failure to mention it in his petitions Nos. 156,643 and 119,059, in which he claims that his disability at the time he filed same was due to the 1954 accident, is not an important consideration in passing on his credibility and otherwise arriving at the true cause of his disability. There is in evidence a letter (Ex. D-l) dated September 17, 1959, from claimant’s counsel addressed to the Employee Benefits Claim Consultant, in which it is also stated that claimant was permanently disabled as a result of his accident of December 1, 1954. However, aside from the petition and letter aforesaid, there, are the records of the several hospitals at which claimant was treated, and the testimony of an orthopedic surgeon, Dr. Martin L. Beller, called by claimant as an expert witness, in addition to the oral testimony of claimant in the record. The board based its findings on these and apparently rejected the statements made by claimant in his petition and of his counsel in his. letter. As the finder of facts, the board had that right.
*624 The burden of proving a causal relationship between the accident and the alleged disability is upon the claimant, Ferlazzo v. Harbison-Walker Refractories Company, 200 Pa. Superior Ct. 890, 189 A. 2d 189 (1963); Smith v. Pullman Standard Car Manufacturing Company, 194 Pa. Superior Ct. 263, 166 A. 2d 299 (1960); and where medical testimony is necessary to establish causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion, the result in question did come from the assigned cause. Ferlazzo v. Harbison-Walker Refractories Company, supra; Smith v. Pullman Standard Car Manufacturing Company, supra; Washko v. Ruckno, Inc., 180 Pa. Superior Ct. 606, 121 A. 2d 456 (1956). We are of the opinion that the circumstances of this case require unequivocal medical testimony of a causal connection between the 1958 accident and claimant’s disability. See Anthony v. Lee Coal Company, 168 Pa. Superior Ct. 397, 77 A. 2d 657 (1951). Claimant relied on the testimony of Dr. Martin L. Beller to establish that causal connection.
The opinion of Dr. Beller is based on his examination of the claimant, which was not made until May 26, 1961, on the history given to him by the claimant on that occasion, on X rays taken at that time, and on his review of claimant’s hospital records. Dr. Beller admitted that the condition of claimant’s hip was primarily a natural sequence of the disease of degenerative arthritis and that, although the trauma cannot be discounted as an aggravating factor, “that certainly is not known.” Therefore, his opinion that there is a causal connection between the 1958 accident and the hip condition does not measure up to the standard of proof for medical testimony herein previously discussed. For that reason the condition of the hip must be eliminated from' our present consideration of the *625 results of the 1958 accident. Dr. Beller’s uncertainty about the cause of the hip condition is consistent' with the facts disclosed in the record of the Presbyterian Hospital, viz., that claimant’s complaints on admission were of pain in his thigh and not in his back, the pain in which had diminished; and that he had been in the orthopedic clinic about two weeks before the accident of November 21, 1958.
However, Dr. Seller unequivocally states that the 1958 accident aggravated the pre-existing low back derangement and that claimant is one hundred per cent disabled on the basis of his back alone. We must, therefore, closely examine the record to see whether it contains sufficient support for his opinion as to the back.
Viewing the record in a light favorable to the claimant and giving him the benefit of all inferences that logically and reasonably can be deduced therefrom, as we are required to do since he has an award, Miller v. Schiffner, 196 Pa. Superior Ct. 84, 173 A. 2d 707 (1961), the following statement of facts is justified by the record, viz.:
Prior to December 1, 1954, he had been in good health and well able to do heavy lifting work for appellant-employer, by whom he had been employed since 1951 (after serving in the United States Army overseas for over two years, he had been discharged in 1945). On December 1, 1954, at the age of 39, while running a leaf suction hose, he slipped and fell backward on the curb and wrenched his back. He was taken to the Delaware County Hospital, where his back was taped, and he was sent home, the diagnosis of his condition being “probable herniated disk”. He returned to work December 17, 1954, and was given light work temporarily; but he later returned to his original work on the trash truck, building manholes, and using pick and shovel digging ditches. He performed this work with *626 discomfort and inconvenience, wearing a belt to support Ms back and securing pills from appellant’s dispensary to alleviate his pain. He stated, “I was walking on my toes and half bent with this brace [before his second accident].” He continued to work under these conditions until November 21, 1958, when he slipped off a platform on which he was working building a stone wall, fell one and one-half feet onto the stones, and landed on his left side. On November 24, 1958, he was admitted to the Presbyterian Hospital on the complaint of “pain in the anterior aspect of the left thigh”, and remained there for seventeen days, during which his left leg was placed in traction and X rays were taken. When he was released from the hospital he had pain in his back and hip but, nevertheless, returned to work and continued to work sporadically until May 13, 1959, when he entered the Veterans Hospital, where an operation was performed on his back. Subsequently an operation was performed on his hip.
There is no doubt that at the time of the examination by Dr. Beller and at the time of the hearings the claimant was totally disabled by reason of his back or his hip, separately or in combination. However, we fail to find any evidence to support Dr. Seller’s opinion that .the fall sustained by claimant on November 21, 1958, had any effect on the condition of claimant’s back.
The physical examination of claimant by Dr. Beller made in 1961 and subsequent thereto could not at that time disclose the effect of the 1958 fall. Dr. Dorsch of the Veterans Hospital, who performed the operation on claimant’s back, was not called. Possibly, he could have established a direct connection between the fall and the back since he had observed the condition of the spine during the operation. Dr. Beller did not have that opportunity, and there were no marks on claimant’s back indicating trauma even immediately *627 after lie fell. The X rays taken at the. time of the physical examination showed nothing as to cause hut only the condition as it existed after the operation. The only thing disclosed by the history taken from claimant at that time was the fact that he had injured his back in 1954 and had an injury in 1956 (presumably intended to mean 1958), but without disclosing its nature.
The record of the Presbyterian Hospital made after the 1958 accident makes no reference to the back except that the pain in the back had diminished. Likewise, in the record of the Veterans Hospital, we fail to find anything to connect the fall of 1958 with the back condition, except that on June 15, 1959, Dr. Dorsch performed an operation on the back for a herniated disc, the cause of which, not being stated, could have been the 1954 accident. The Delaware County Hospital record following the 1954 accident shows only that the. diagnosis at that time was “probable herniated disk”.
. Although claimant, in describing his fall of 1958, said, “I reopened — I reinjured myself over again”, he does not elaborate in what manner; and since at that time he was suffering from pain in both his back and leg and later returned to the Presbyterian Hospital only for the leg pain, his statement is not sufficient to establish that the fall in. 1958 affected his back.
Therefore, we must conclude that Dr. Seller’s statement, to the effect that the fall of 1958 reaggravated the arthritic condition in claimant’s spine, was entirely conjectural and for that reason insufficient to establish the fact that the fall was the cause of claimant’s total disability.
Although there is a definite statement by Dr. Beller that the 1958 fall, by aggravating claimant’s back condition, was the cause of his disability, and we have repeatedly stated that the credibility of expert witnesses and the weight to be attached to their testi *628 mony are matters exclusively for the board, Ferlazzo v. Harbison-Walker Refractories Company, supra; Gasior v. Pittsburgh, 188 Pa. Superior Ct. 371, 146 A. 2d 320 (1958), when the basis of such expert opinions is contrary to established facts or is based on assumptions not supported by the evidence, it is weightless and valueless. Clark v. Pennsylvania Power and Light Company, 336 Pa. 75, 6 A. 2d 892 (1939); 15 P.L.E. Evidence §415, and cases therein cited.
We would not sustain a verdict of a jury under those circumstances. Although the compensation act is to be given a liberal construction, we are of the opinion that we are not precluded from setting aside an award of this nature under those circumstances.
Therefore, the action of the Workmen’s Compensation Board of basing its finding, that claimant’s total disability was caused by the 1958 accident, solely on the opinion of Dr. Beller, we find to be unjustified and unsupported by competent evidence.
However, claimant’s condition is severe and his disability is total. If there is any possibility that the fall of 1958 was the cause of same, he should have full opportunity to establish that fact.[1] For that reason we shall remand this case to the Workmen’s Compensation Board for the taking of further testimony, which may be offered by both claimant and appellants.
Appeal sustained, award vacated, and record remanded to the Workmen’s Compensation Board for such action as is consistent with this opinion.
Watkins and Flood, JJ., would affirm on the opinion of the court below.

 This issue is also of great concern and importance to appellants in view of the allegations made by claimant in his earlier petitions that the 1954 accident was the cause of his disability.