**Marion COLLINS, Appellant,**

v.

**N–REN CORPORATION, Appellee.**

**No. 77–2052.**

United States Court of Appeals,
Tenth Circuit.

Submitted July 16, 1979.

Decided Aug. 24, 1979.

Jack B. Sellers Law Associates, Inc., Sapulpa, Okl. (Joe A. Moore, Memphis, Tenn., on brief), for appellant.

Dan A. Rogers and W. Michael Hill, Tulsa, Okl., for appellee.

Before SETH, Chief Judge, and BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Marion Collins (Collins) appeals from an adverse judgment after trial to the court in this diversity case. Collins was injured when a fertilizer manufacturing plant owned and operated by Cherokee Nitrogen Company (Cherokee) exploded on January 13, 1973.[1] The background facts are not in dispute.

---

1. On March 29, 1974, following the explosion, Cherokee merged into N–Ren Corporation.

Cherokee's ammonium nitrate fertilizer manufacturing plant was located five miles southeast of Pryor, Oklahoma. Collins, at all times material herein, worked for National Gypsum Company, whose facilities were located adjacent to Cherokee's plant.

On the evening of the explosion, a fire erupted in Cherokee's bulk storage warehouse. High winds carried burning debris onto National Gypsum property where Collins and other employees were attempting to control grass fires. Shortly after the fire erupted, the Cherokee warehouse exploded with a tremendous force resulting in injury to Collins who was approximately 300 yards away. Collins and a number of other National Gypsum and Cherokee employees were taken to the hospital for treatment. As a result of his injuries, which included partial hearing loss, Collins brought this action against N–Ren seeking damages under the doctrine of *res ipsa loquitur*.

After hearing all of the evidence the court ordered judgment in favor of N–Ren, finding and concluding, *inter alia*, that: the ammonium nitrate fertilizer manufactured at the Cherokee plant contained properties which are explosive when subjected to extreme heat; the fire occurred prior to the explosion which injured Collins; Collins was knocked off his feet by the force of the explosion; the parties agreed that the explosion was the result of the fire; there was no evidence as to the exact cause of the fire or that the fire was the result of negligence on the part of Cherokee; Collins introduced evidence speculative as to the cause of the fire; there was no evidence that the fire could have been extinguished or contained or that the explosion would not have occurred if certain equipment had been available; under *Federal Insurance Company v. United States, 538 F.2d 300* (10th Cir. 1976) a *prima facie* case of *res ipsa loquitur* is established when the plaintiff proves: "(1) the event is of a kind which ordinarily does not occur in the absence of someone's negligence, (2) the accident was caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the accident was not due to any voluntary action or contribution on the part of the plain-

tiff."; the doctrine of *res ipsa loquitur* is not applicable to the facts of this case and Collins has not sustained the burden to bring himself within the confines of the doctrine; [N–Ren] cannot be held negligent for the explosion in this case absent evidence that "said fire would not have caused the explosion had more sophisticated equipment been present and used".

Collins' sole allegation of error on appeal is that the court erred in finding and concluding that he was not entitled to the benefit of the doctrine of *res ipsa loquitur* as a matter of law. We agree.

As noted by the trial court, citing to *Federal Insurance Co. v. United States, supra,* a *prima facie* case of *res ipsa loquitur* is established under the law of Oklahoma when a plaintiff proves a) the event is the type which would not ordinarily occur absent someone's negligence, b) exclusive control is with the defendant, and c) the plaintiff did not act or contribute to the injuries sustained. In the instant case Collins established that the Cherokee plant was an agency or instrumentality within the exclusive control of the defendant and that the accident was not due to any voluntary action or contribution on his part. The dispositive question, however, is whether "the event is of a kind which ordinarily does not occur in the absence of someone's negligence".

In considering the dispositive question we are guided by numerous Oklahoma decisions. The fact that one is injured, standing alone, carries no presumption of negligence. *Lang v. Amateur Softball Association of America, 520 P.2d 659* (Okl.1974). *Res ipsa loquitur* cannot be invoked until, as a preliminary proposition, a plaintiff establishes what caused the accident. *Green v. Safeway Stores, Inc., 541 P.2d 200* (Okl.1975). The purpose of *res ipsa loquitur* is to aid the plaintiff in making a *prima facie* case of negligence on the part of the defendant by allowing the trier of facts to infer negligence as a legitimate deduction of fact from fundamental facts established by competent evidence on the

theory that common experience of men tells one that, in such a situation and in the ordinary course of events, injury or damage complained of by plaintiff would not have occurred in absence of negligence on part of defendant. *St. John's Hospital & School of Nursing, Inc. v. Chapman, 434 P.2d 160* (Okl.1967). *See also: Martin v. Stratton, 515 P.2d 1366* (Okl.1973) and *Briscoe v. Oklahoma Natural Gas Company, 509 P.2d 126* (Okl.1973). The doctrine is applied only in negligence actions in which, because of the particular circumstances existing at the time, proof whether negligence on the part of defendant was involved is particularly within the power of the defendant and is beyond the power of the plaintiff. *St. John's Hospital & School of Nursing, Inc. v. Chapman, supra.* On the other hand, the doctrine of *res ipsa loquitur* cannot be applied to create an inference of negligence in those actions where direct proof of the defendant's negligence is not beyond the power of the plaintiff. *Flick v. Crouch, 555 P.2d 1274* (Okl.1976). Applying these rules to the facts of the case at bar, we hold that the trial court erred in determining that Collins was not entitled to the benefit of the doctrine of *res ipsa loquitur.*

Collins called several key witnesses in developing his case, including Joe Fulmer (Fulmer), staff consultant for Cherokee who served as production superintendent at the time of the accident; Lewis Gabbard (Gabbard), "A operator" over the nitrate area at the time of the accident; A. F. Dyer (Dyer), an engineer qualified as an expert in fire control and protection, and a member of a task force established by the Fertilizer Institute to investigate the accident; Francis L. Shirley (Shirley), Agent Supervisor, Office of the State Fire Marshal of Oklahoma.

Fulmer testified that: the Cherokee plant manufactured ammonium nitrate fertilizer by neutralizing ammonia and sulphuric acid together to form ammonium nitrate liquid, after which the liquid is evaporated and converted into a dry, solid, bulk material; the fertilizer is then transported, after conditioning, by a conveyor to a bulk warehouse where it is stored until sold; the conveyor is a continuous belt which moves on idlers or rollers; the idlers or rollers are cylinders mounted on shafts with bearings which require periodic lubrication; on the day of the accident there were approximately 15,000 tons of fertilizer stored in the warehouse constituting its full capacity at the time to the explosion; water is the best agent to extinguish fires inside the plant involving the material [fertilizer] in question; and there was no water firefighting equipment or sprinkler system within the warehouse on the date of the accident.

Gabbard testified that: he was working as an "A operator" over the nitrate area at the time of the accident; an alarm was received on the panel board in the control room, after which he shut down the operation; he immediately ran out of the control room and began checking the sequences of operation within the plant; upon checking the conveyor extending from the bagging building into the warehouse, he noticed that the conveyor belt was limp, laying over the rollers, either broken or burnt in two; he smelled smoke while checking the belt, and while continuing his inspection, he observed flames coming from the warehouse door where the conveyor belt entered the warehouse; the water hose he attempted to use was plugged; he heard a small explosion followed by a very large one; the only machinery located in the warehouse area where he observed the fire was the conveyor; he did not observe fire in any other area; he had no knowledge when the conveyor bearings carrying product into the warehouse had been last lubricated since "We had just come back from our long change, our days off at that day of the explosion"; and that although it was routine to check the conveyor bearings he did not do so on the day of the accident.

Dyer testified that: there was "not much physical evidence that would really tell us

what the cause of the fire was"; "probably the payloader or conveyor belt might offer the greatest plausibility as a candidate point of ignition"; ammonium nitrate in and of itself is not explosive; ammonium nitrate mixed with a carbonaceous material in a finely divided form could be made to burn and that combination, in a confined state which would not release the products of decomposition as it burned could lead to an explosion; several of the conveyor rollers had been fractured or fragmented from a strong internal pressure which indicated there might have been an internal explosion in the rollers; the rollers exploded after the ammonium nitrate contaminated with some sort of carbonaceous material inside the rollers; and the fire heated the rollers, causing a very small explosion which, in turn, released enough energy to trigger the large explosion.

Shirley testified that: automatic sprinklers were available for installation in structures such as the warehouse in question and that such a system would have been the best; the inch-and-one-half hose used by Cherokee employees to fight the fire was not "an adequate size hose line or water pressure to sustain a prolonged period of water application on a fire of a warehouse of that size"; one of the rollers found "gave indication that it had had an internal explosion"; and that some of the rollers operating in the dusty condition of the plant would freeze and become inoperable causing the conveyor belt to slide.

In addition to the aforesaid testimony, the parties stipulated: the fire caused the explosion; N–Ren employees had knowledge that prior to the fire the conveyor rollers got stuck, scraped rubber off of the belting, and rollers had worn flat but never seemed hot enough to ignite a building; subsequent to the fire, recovered belting had evidence of burning; and that N–Ren employees observed no third parties in the plant although, by nature of the business, third parties were regularly in and out of the place.

The aggregate of the testimony and stipulations leads us to conclude that Collins established a *prima facie* case of negligence allowing him to proceed under the doctrine of *res ipsa loquitur* as construed by the courts of Oklahoma.

It is clear that Collins' actions did not contribute to his injury and that Cherokee had exclusive control of the plant at the time of the accident. Furthermore, whereas the experts were never able to specifically ascertain the origin of the fire and could only speculate that it "most probably" originated with the payloader or conveyor, it is uncontested that the fire caused the explosion which, in turn, injured Collins. Thus, we conclude that in the final analysis Collins did establish the event (the explosion) which would not have ordinarily occurred absent someone's negligence.

The experts' testimony established that presenting evidence of direct proof of the cause of the fire was not within Collins' power. *Flick v. Crouch, supra.* In our view, this evidence was such as to entitle Collins to proceed under the doctrine of *res ipsa loquitur*, particularly when, as here, proof of whether Cherokee was negligent was particularly within Cherokee's power, and beyond the power of Collins. We hold that Collins presented sufficient evidence to activate the inference of Cherokee's negligence under the doctrine of *res ipsa loquitur* and that Cherokee failed to submit rebuttal evidence sufficient to overcome the inference. *See: Turney v. Anspaugh, 581 P.2d 1301* (Okl.1978).

Reversed and remanded for new trial.