Roberta **LANZA**

v.

**Vincent and Kathleen PORETTI, Ind. and t/a Duvinee Beauty Salon**

and

**Beatrice K. Tucker and Louis H. Slifkin, Esquire, remaining executors of the Estate of Sophia Klinghoffer and Louis Slifkin, Esquire, and Girard Bank, Executors of the Estate of Sidney O. Klinghoffer, A.T.I.M.A. and for Eyes Optical, Inc., third party defendants.**

Civ. A. No. 80–3233.

United States District Court, E. D. Pennsylvania.

April 16, 1982.

---

Cozen Begier & O'Connor by Christopher C. Fallon, Jr., Philadelphia, Pa., for plaintiff.

Margolis, Edelstein & Scherlis by Jonathan Wheeler, Philadelphia, Pa., for defendants.

McWilliams, Sweeney & Powell and Kates, Livesey & Mazzocone by J. Vincent Roche and Thomas Delevie, Philadelphia, Pa., for third-party defendants.

## MEMORANDUM

JOHN MORGAN DAVIS, Senior District Judge.

After a jury trial in this fire property loss action, a verdict was returned in favor of the defendants Vincent and Kathleen Poretti. Before the court are plaintiff's motions for judgment n. o. v. or, in the alternative, for a new trial. In addition, third-party plaintiffs move for a new trial

against third-party defendants in the event a new trial is granted to plaintiffs. After careful consideration of plaintiff's motions, I have concluded that the arguments raised therein are without merit and they are denied accordingly.[1]

Prior to his recent death, plaintiff, Robert Lanza, was engaged in the fashion design business. Tr. 3. His business was conducted on the second floor of the premises located at 1630 Walnut Street, Philadelphia, Pennsylvania. Tr. 12. The defendants owned and operated the DuVinee Beauty Salon which occupied the first floor of such premises. Tr. 16. On January 2, 1979, a fire occurred causing extensive damage to the entire building and all of its contents. Tr. 38–79. Plaintiff thereafter instituted this action originally contending that the fire started on the first floor, and was due to the careless disposal of smoking and waste materials from the beauty shop. Tr. 4. At trial, however, plaintiff was granted leave to amend his complaint to include an intentional count. Tr. 106. Defendants denied liability and in a third-party complaint averred that the fire resulted from the negligence of the third-party defendants, Estate of Sophia and Sidney Klinghoffer, who owned the premises in question at the time of the fire. Tr. 5. In addition, the defendant also attempted to prove at trial that the fire was incendiary.[2] At the close of the defendants' case, a directed verdict was entered in favor of the third-party defendants pursuant to Fed.R.Civ.P. 50(a). The jury subsequently, through interrogatories,[3] returned a verdict in favor of the defendants.

---

1. In light of my disposition of plaintiff's motions, the arguments raised in third-party plaintiffs' motion for a new trial need not be considered.

2. At the time of the fire, the property was in the process of being sold by the Klinghoffer estate to For Eyes Optical Co., additional third-party defendants. Defendants claimed that the fire was set by For Eyes in an attempt to destroy their business, thereby giving their landlord (Klinghoffer estate) and the purchaser of the property (For Eyes) the opportunity to terminate their lease. Tr. 105.

3. The following interrogatories were submitted to the jury.

   1. Do you find that the fire that occurred on January 2, 1979 at 1630 Walnut Street, occurred as a result of the carelessness or negligence of defendants, their agents, servants or employees and that such was a proximate cause of the property damage sustained by the plaintiff?

   _____    _____
   Yes         No

   2. Do you find that the fire that occurred on January 2, 1979 at 1630 Walnut Street, occurred as a result of the intentional conduct or gross negligence of the defendants, their

Preliminarily, I must dispose of plaintiff's motion for judgment n. o. v.[4] pursuant to Fed.R.Civ.P. 50(b). That rule provides in pertinent part:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict.

The rule plainly requires that a motion for judgment n. o. v. will not be entertained unless a motion for a directed verdict was first made by the party at the close of the evidence. *Schreffler v. Bd. of Educ. of Delmar School Dist.*, 506 F.Supp. 1300, 1305 (D.C.Del.1981); *Sharp v. Coopers & Lybrand*, 457 F.Supp. 879, 885 (D.C.E.D.Pa. 1978), aff'd, 649 F.2d 175 (3rd Cir. 1981); C. Wright and A. Miller, Federal Practice and Procedure § 2537 (1971). This requirement has been strictly interpreted in this Circuit. *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1195 n.4 (3rd Cir. 1978); *Lowenstein v. Pepsi-Cola Bottling Co. of Pennsauken*, 536 F.2d 9, 10 (3rd Cir.), cert. denied, 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976). It is clear from the record that this prerequisite for a judgment n. o. v. was not met.[5] Therefore, having not first motioned for a directed verdict plaintiff's motion for judgment n. o. v. must be denied.[6]

agents, servants or employees and that such was a proximate cause of the property damage sustained by the plaintiff?

Yes _____ No _____

(If your unanimous answers to both questions No. 1 and No. 2 are "NO," you will return a verdict for the defendants and that ends the case. But, if your unanimous answer to either question No. 1 or question No. 2 is "YES," then you must go on to the remaining interrogatory).

3. If your unanimous answer to either question No. 1 or No. 2 is "YES," then in what amount do you assess damages in favor of plaintiff and against defendants? $_____

The jury unanimously answered questions 1 and 2 in the negative.

4. Plaintiff sets forth the following grounds for his motion for judgment n.o.v.:

1) The verdict is against the weight of the evidence.

2) The verdict is against the weight of the credible evidence.

3) The verdict is against the weight of the credible evidence and the applicable law.

The foregoing are generally proffered as grounds for a new trial where a challenge is made as to the sufficiency of the evidence in dual motions for a new trial and judgment n.o.v. *See Draft Systems, Inc. v. Rimar Mfg., Inc.*, 524 F.Supp. 1049, 1051, n.2 (D.C.E.D.Pa. 1981) (citing cases). Despite this mischaracterization, I conclude that the verdict was not contrary to the clear weight of the credible evidence. Thus, a new trial is not warranted.

5. After reviewing the record, I am unable to find a motion for directed verdict by the plaintiff at any point in the proceedings. Plaintiff did, however, submit a request for a binding jury instruction. See plaintiff's points for charge no. 21. Nevertheless, in this circuit such a request is not deemed equivalent to a motion for a directed verdict. *Mallick v. International Broth. of Elec. Workers*, 644 F.2d 228, 234 (3rd Cir. 1981); *Lowenstein v. Pepsi-Cola Bottling Co. of Pennsauken, supra*, 536 F.2d at 11–12. In the instant case, I neither treated nor ruled on the requested instructions as a motion for directed verdict.

6. The pertinent inquiry in resolving a motion for judgment n.o.v. is "whether, as a matter of law, the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Denneny v. Siegel*, 407 F.2d 433, 439 (3rd Cir. 1969). See also *Vizzini v. Ford Motor Co.*, 569 F.2d 754, 758 (3rd Cir. 1977); *Kerry Coal Co. v. United Mine Workers of America*, 488 F.Supp. 1080, 1095 (D.C.W.D.Pa.1980), aff'd, 637 F.2d 957 (3rd Cir.), cert. denied, —— U.S. ——, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981). It is well established that the evidence must be viewed in the light most favorable to the verdict winner, and all reasonable inferences must be drawn in favor of the non-moving party. *Monsen v. Consolidated Dressed Beef Co., Inc.*, 579 F.2d 793, 796 (3rd Cir.), cert. denied, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978); *Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 518 F.Supp. 102, 105 (D.C.E.D.Pa.1981). The decision of the jury may be overturned only if the facts and all reasonable and justifiable inferences therefrom would not allow a reasonable

Plaintiff alternatively moves for a new trial pursuant to Fed.R.Civ.P. 59. Decisions to grant a new trial rest in the sound discretion of the court whose "duty is essentially to see that there is no miscarriage of justice." 6A *Moore's Federal Practice* ¶ 59.08[5] at 59–160. See also *Thomas v. E.J. Korvette, Inc.*, 476 F.2d 471, 474–75 (3rd Cir. 1973). The court may not substitute its own judgment for that of the jury, *Marder v. Conwed Corp.*, 75 F.R.D. 48, 54 (D.C.E.D.Pa.1977), and the jury's verdict may be set aside only if manifest injustice will result if it were allowed to stand.

Plaintiff's initial contention in his motion for new trial is predicated upon matters occurring during the jury deliberations. Following the jury verdict, counsel for the plaintiff and defendant interviewed members of the jury in the deliberation room. During the course of discussions it was discovered that the jurors had conducted an experiment during the course of their deliberations. Plaintiff's counsel promptly took steps to bring this information to the court's attention.

In order to ascertain if extraneous material had been observed by the jurors during their deliberations, an evidentiary hearing was held on December 21, 1981. At that time two of the eight jurors were questioned.[7] Their testimony establishes that an unauthorized experiment did, in fact, occur in the deliberation room. Insofar as the "test" had the effect of introducing new evidence out of the presence of the court and parties, it was patently improper since such a procedure conflicts with the fundamental rule that jurors decide the merits of cases based upon the evidence presented in the adversary arena. "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. Colorado*, 205 U.S. 454, 459, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907) (Holmes, J.). A new trial is not required in all cases, however, unless the extraneous influence upon the jury creates a "reasonable possibility of prejudice." *United States v. Pinto*, 486 F.Supp. 578, 579 (D.C.E.D.Pa.1980) (quoting *United States v. Stoehr*, 196 F.2d 276, 283 (3rd Cir.), *cert. denied*, 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643 (1952)). See also *Government of Virgin Islands v. Gereau*, 523 F.2d 140, 154 (3rd Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); *Simon v. Kuhlman*, 488 F.Supp. 59, 68 (D.C.S.D.N.Y.1979). The question whether prejudice resulted from this experiment must be resolved by the court drawing reasonable inferences as to the probable effect of the jury's misconduct. "Though a judge lacks even the insight of a psychiatrist, he must reach a judgment concerning the subjective effects of objective facts without benefit of couch-interview introspections." *United States v.*

---

person to reach the same conclusion as that reached by the jury. *Marder v. Conwed Corp.*, 75 F.R.D. 48, 54 (D.C.E.D.Pa.1977). Even if plaintiff's motion was cognizable at this time, there is unquestionably more than sufficient evidence supporting the jury's verdict absolving defendants of liability and plaintiff cannot seriously contend otherwise.

7. The attorneys were instructed to carefully limit their questions in accordance with Fed.R. Evid. 606(b), which provides in part that:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any thing upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or concerning his mental processes in connec-

tion therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to bear upon any juror.* (emphasis added).

See also *United States v. Greer*, 620 F.2d 1383, 1385 (10th Cir. 1980); *Government of Virgin Islands v. Gereau*, 523 F.2d 140, 149 (3rd Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); *United States v. Pinto*, 486 F.Supp. 578, 579 (D.C.E.D.Pa.1980); *Simon v. Kuhlman*, 488 F.Supp. 59, 68 (D.C.S.D.N.Y. 1979). Rule 606(b) furnishes a major exception to the general rule that a juror may not impeach his own verdict once the jury has been discharged. *McDonald v. Pless*, 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915); *Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245, 1247–48 (3rd Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971).

*Howard*, 506 F.2d 865, 869 (5th Cir. 1975). In outlining the relevant areas of inquiry for making this determination, the court in *Simon, supra*, stated:

> To determine whether the experiment raised a possibility of prejudice to petitioner, this court must ascertain whether the experiment actually took place and, if so, under what conditions. Although the list which follows is by no means intended to be exclusive, areas of inquiry relevant to the issue to be decided are: (1) how the experiment came about; (2) how many jurors were involved; (3) whether the jurors discussed the results of the experiment and, if so, what was said; and (4) whether the experiment took place before or after the jurors reached a verdict and if the experiment took place before the verdict was reached, at what point in the deliberation it occurred.

*Simon v. Kuhlman, supra*, 488 F.Supp. at 68. After reviewing the testimony elicited at the post-verdict evidentiary hearing and the record as a whole, I conclude that the unauthorized jury experiment, while certainly improper, did not create a reasonable possibility of prejudice. Accordingly, a new trial is not warranted on this ground.

It must be noted from the outset that plaintiff introduced no direct evidence in support of either theory of liability. From the circumstantial evidence presented, the jury was expected to find that the fire was either intentionally set by the defendants individually or in concert, or that it resulted from the negligence of defendant Poretti only. During the course of the trial, expert testimony established that the fire originated in the supply room of defendants' beauty shop. Tr. 83, 159. The experts sharply disagreed, however, as to the exact cause of the fire. Lawrence Dove, a former Assistant Fire Marshal in the City of Philadelphia, testified that in his opinion the fire was a result of arson.[8] Tr. 110. Contrariwise, John Connell, a former Assistant Fire Marshal in New York City, testified that in his opinion the fire was caused by carelessly discarded smoking materials. Tr. 315.

█ Plaintiff vigorously sought to prove that the fire resulted from the ignition of combustible material caused by careless smoking on the part of Mr. Poretti. In support of this theory it was established that defendant was a smoker, Tr. 579, and that he was the last person to leave his shop on the day of the fire. Tr. 27. Mr. Poretti left at approximately 5:00 P.M. Tr. 27. The fire was discovered shortly thereafter. Tr. 89. Defendant, however, testified that he did not recall smoking inside his salon on the day of the fire. Tr. 598. Moreover, prior to leaving, defendant stated that he checked the supply room, where plaintiff's expert testified the fire had originated, and found no evidence of smoldering cigars or cigarettes. Tr. 579. Additionally, although defense counsel was prohibited from introducing evidence as to the identity of persons other than defendants' employees having keys to the premises,[9] Tr. 244, it was established that other persons had access to the premises on the day of the fire. Tr. 686.

█ I recognize that a plaintiff in a fire case where careless smoking is alleged to be the cause can rarely do more than present expert testimony as to the fire's cause, and support such testimony by some evidence of smoking on the premises shortly before the fire began. This will usually make out a case of negligence sufficient to put the defendant to proof. *See, e.g., Gichner v. Antonio Troiano Tile & Marble Co.*, 410 F.2d 238, 244 (D.C.Cir.1969). Notwithstanding this problem of proof, on a motion for a new trial where it is alleged that extraneous factors were brought to bear on the jury, the requirement that such factors

---

**8.** Plaintiff, however, did not present any evidence indicating that Mr. Poretti intentionally set the fire. In fact, plaintiff's counsel candidly admitted during the trial that he did not believe that the defendant "set it." Tr. 109. And, of course, the defendant denied any involvement in an arson scheme as did the third-party defendants.

**9.** The defendant's failure to supplement his answers to plaintiff's interrogatories concerning access to building keys was sufficient ground to preclude new evidence during trial.

have a prejudicial impact serves to accommodate the dual interests of finality of adjudication and fairness to the litigants. In my view the fairness of the trial was not materially effected by the jury's discommendable behavior.

■ Apart from the trial record, the evidence adduced at the hearing established that during their deliberations two jurors lit up cigars of various qualities to determine their respective burn times. Evidentiary hearing at 12, 40. This so-called jury experiment consisted of the burning of two cigars—one five inches in length with a one inch diameter (Philly Perfecto), the other six inches in length with a one-half inch diameter (Cuban cigar). Evidentiary hearing at 14, 20. The cigars were placed in an ash tray and the burning was timed; the shorter cigar burning in seven minutes and the longer in nine minutes. Both cigars were the personal property of the two jurors who initiated the experiment.

In response to a question relating to what induced the jurors to burn cigars, one of the jurors who participated directly in the experiment stated:

Well, I think that one thing—well, I'll try to recall. We were arguing back and forth as to whether or not Mr. Poretti started the fire, number one, because you had all kinds of diagrams.

You had two fire chiefs, I think, Mr. Dove and I forget who the other gentleman was, and then you had a gentleman from Lancaster. I'm not sure, if he was supposed to be an expert—and you had Connell, and they all agreed that that was a suspicious fire in nature.

And we'll agree that it started in the one corner, by all the evidence that had been presented.

And I don't think—the only reason they tried the cigar, I would assume—I'm trying to recollect now who actually brought it up. I know we weren't all in agreement as to our initial verdict.

We all didn't agree and we were debating back and forth and arguing. Somebody suggested well, if it was a cigar that did it, you have one in your pocket, I've got one, let's light them and see how long it takes because I think the testimony you had presented of Mr. Poretti, that it was—the fire started fifteen minutes after he left the establishment, and there were a couple loose ends in our mind, such as was he the only one that had the keys to the place. Did anybody else get in there?

Evidentiary Hearing at 16–17. This juror indicated, however, that it was discussed only briefly, and "not to any great extent." Evidentiary hearing at 20. The other juror testified that she was not involved in the experiment and did not consider it in her deliberations.[10] Evidentiary hearing at 42. Furthermore, the cigar burning test occurred approximately half way through the jury's four hours of deliberations and before a unanimous decision was reached. Evidentiary hearing at 22, 41. While this latter fact suggests the possibility of prejudice, its significance is attenuated by the substantial length of time which elapsed after the experiment. The continuance of deliberations indicates that the unauthorized experiment did not affect the jury's decision-making process.

---

10. The relevant portion of her testimony is as follows:

Q. How many jurors were actually involved in the burning of the cigars?
A. It was just the two men.
Q. Did the other jurors observe or watch the burning of the cigar?
A. I don't know exactly whether they did or not because I didn't pay any attention to it myself.
Q. Well, was there a discussion after those cigars were burned as to how long it took them to burn?
A. Well, they did discuss it, yes.

Q. Who discussed how long it took those cigars to burn?
A. The gentlemen that was here, the other gentleman and him discuss it.
Q. Mr. Horstmann and the other fellow with the other cigar?
A. Yes.
Q. Do you remember them discussing how long it took for the cigars to burn?
A. No, I don't remember that.
Q. Do you remember how long the cigars were or what kind of cigars they were?
A. No, I didn't pay no attention to that.
Evidentiary Hearing at 42–43.

While the actual effect upon the jury's decision can never be discerned, several factors lead me to the foregoing conclusion. First, only the two jurors who initiated the experiment were actually involved in the test procedure. It consumed less than ten minutes of the four hour deliberation and was discussed only briefly by the principals involved. The remainder of the jury seemed to ignore the procedure and did not discuss it. More importantly, no conclusion was reached on the basis of the test since the jury continued to deliberate for an additional two hours. Finally, the experiment's prejudicial potential in relation to the key issues in the case is speculative at best.[11] Cf., *Krause v. Rhodes,* 570 F.2d 563, 566 (6th Cir. 1977), *cert. denied,* 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 517 (1978) (threatened juror-prejudicial); *Farese v. United States,* 428 F.2d 178, 182 (5th Cir. 1970) (cash found in exhibit prejudicial in sense that crime charged involved monetary gain); *United States v. Beach,* 296 F.2d 153, 159 (2nd Cir. 1961) (operation of adding machines prejudicial where credibility of defendant as to hearing the machines determinative); *Stiles v. Lawrie,* 211 F.2d 188, 189 (6th Cir. 1954) (manual tabulating speed according to skid distances prejudical where speed determinative factor); *United States v. Michener,* 152 F.2d 880, 885 (3rd Cir. 1945) (admission of documents containing disparaging remarks about defendant prejudicial); *United States v. Pinto,* 486 F.Supp. 578, 579–80 (D.C.E.D.Pa.1980) (inadmissible incriminating evidence seen by jury prejudicial).

Plaintiff next contends that I erred in excluding the opinion evidence of William Ehleiter regarding the cause of the fire. Mr. Ehleiter, a cause and origin fire investigator, was hired by the defendant but called as a witness on behalf of the plaintiff. Mr. Ehleiter testified outside the hearing of the jury that, after eliminating other possible causes, in his opinion the fire was caused by either "the possibility of arson or possible careless disposal of cigarette materials." Tr. 219. I precluded the jury from hearing this testimony since the witness was unable to testify to a reasonable degree of scientific certainty what he believed to be the cause of the fire.[12] Tr. 243. Absent direct physical evidence of smoking or elimination of all other possible causes with reasonable scientific certainty, the witness' opinion amounted to nothing more than mere speculation and conjecture. *Atlantic Mutual Ins. Co. v. Lavino Shipping Co.,* 441 F.2d 473, 474–75 (3rd Cir. 1971); *Kridler v. Ford Motor Co.,* 300 F.Supp. 1163, 1166 (D.C.W.D.Pa.1969). It was, therefore, properly excluded since it would not assist the trier of fact in reaching a conclusion as to the cause of the fire. See *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F.Supp. 1313, 1333–34 (D.C.E.D.Pa.1980).

Plaintiff relies primarily on *Gichner v. Antonio Troiano Tile & Marble Co.,* 410 F.2d 238 (D.C.Cir.1969). In *Gichner,* the District of Columbia Circuit Court of Appeals countenanced the use of expert opinion by way of process of elimination to identify the cause of a fire. Unlike the instant case, however, the expert in *Gichner* was able to eliminate *all* possible causes but

11. Although the jurors at the hearing did not recall any testimony concerning the type of cigars smoked by Mr. Poretti, the record indicates that Poretti smoked standard five or six inch cigars. Tr. at 587. The jurors' experiment is relevant to the plaintiff's theory that the fire was possibly caused by defendant's careless disposal of cigars. Its prejudicial potential, however, is negligible since the plaintiff's expert testified affirmatively that the disposal of cigars could cause an intense fire under the circumstances of this case within fifteen minutes. Tr. at 317, 256–57. The results *of the experiment, thus, confirmed the plausibility of the expert's opinion. The utility of*

that experiment seems marginal in view of this expert opinion. In sum, any prejudice in terms of an adverse effect upon the jury is purely speculative. This reinforces my conclusion that under the circumstances of the case, the jury's experiment did not effect the fairness of the verdict.

12. Mr. Ehleiter was, however, permitted to eliminate other possible causes of the fire. In these instances he was able to express his opinions with a reasonable degree of scientific certainty and his testimony, therefore, aided the *trier of fact in determining at least what did not cause the fire.* Tr. 245–250.

one. *Id.* at 240.[13] His opinion did not merely leave one of two inconsistent inferences for possible adoption by the jury and, therefore, rose above the level of pure guesswork. The proffered opinion in the instant case is clearly distinguishable. Further, it should be noted that the court in *Gichner* clearly stated when it thought such use of expert testimony was appropriate:

[W]e think that, where a fire investigator identifies the cause of a fire in terms of probabilities, as opposed to mere possibilities, by eliminating *all* potential causes of the fire *but one*, that testimony is not only relevant, but in some circumstances may be a basis for decision. Bearing on the credibility of such testimony is the thoroughness with which the expert identifies all the potential causes and the soundness of his reasoning in eliminating each one.

*Id.* at 247 (emphasis added). Since Mr. Ehleiter was unable to eliminate all potential causes of the fire but one, and spoke in terms of possibilities, as opposed to probabilities, the holding in *Gichner* does not dictate a contrary result.[14]

Moreover, the record establishes that the other expert witnesses called by the plaintiff were at odds as to the exact cause of the fire. One suggested arson as a cause, the other believed careless smoking was the cause of the blaze.[15] Thus, the jury was well aware that alternative causes were proffered by the plaintiff, and both theories were ably argued to the jury. The excluded testimony of Mr. Ehleiter reiterated this view of two possible causes. Accordingly, the excluded evidence was merely cumulative, and any error was harmless. *Howmet Aluminum Corp. v. Hartford Accident & Indemnity Co.*, 665 F.2d 476, 478 (3rd Cir. 1981).

The plaintiff further argues that a new trial is warranted on the ground that two requested instructions were improvidently refused by the trial court. Plaintiff requested that the jury be charged on the doctrine of res ipsa loquitur.[16] In Pennsylvania, the doctrine of res ipsa loquitur is not regarded as a substantive rule of law or a procedural rule, but is merely evidentiary in nature. It is simply a shorthand expression for circumstantial proof of negligence.[17] *Gilbert v. Korvette, Inc.*, 457

---

**13.** Accord, *St. Lewis v. Firestone*, 130 A.2d 317 (D.C.Mun.App.1957); *George v. Bekins Van & Storage Co.*, 33 Cal.2d 834, 835, 205 P.2d 1037 (1949).

**14.** It should be noted that counsel for the plaintiff recognized that expert testimony should be based upon a reasonable scientific certainty of the *probable* cause of the fire, not any *possible* causes. In my view, this is more than an exercise in semantics but strikes at the heart of the reliability of expert testimony which in turn bears upon the usefulness of the evidence to the jury.

**15.** See note 9 supra and accompanying text. At this juncture, I must note plaintiff's claim of error in my permitting defendant's cross-examination of Fire Marshal Dove to exceed the scope of direct testimony. During trial, while Dove's direct testimony was generally limited to the place of origin of the fire, his opinion as to its cause was elicited over objection. Under Fed.R.Evid. 611(b) the court has discretion to allow inquiry into additional matters in the interest of justice. See *Lis v. Robert Packer Hospital*, 579 F.2d 819, 822 (3rd Cir. 1978), *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 346 (1979). In this case I find no error since the defendant most certainly would have called

this witness in his case, and the expert's opinion was relevant and more valuable when elicited along with its factual basis. See *United States v. Whitaker*, 372 F.Supp. 154, 166 (D.C. M.D.Pa.1974), *aff'd*, 503 F.2d 1399 (3rd Cir.) *cert. denied*, 419 U.S. 1113, 95 S.Ct. 789, 42 L.Ed.2d 810 (1975).

**16.** The Latin phrase, which sprung from a casual utterance by Chief Baron Pollock during argument in *Byrne v. Boodle*, 2 H.&C. 722, 159 Eng.Rep. 299 (Ex. 1863), means nothing more than "the thing speaks for itself." W. Prosser, Handbook of the Law of Torts § 39, at 213 (4th ed. 1971). For a thorough review of the application of this doctrine in fire cases, *see* Annot., 8 A.L.R.3d 974 (1966).

**17.** The rationale behind this so-called doctrine was succinctly stated in *Collins v. N.-Ren Corp.*, 604 F.2d 659 (10th Cir. 1979) where the court stated: "The purpose of res ipsa loquitur is to aid the plaintiff in making a prima facie case of negligence on the part of the defendant by allowing the trier of facts to infer negligence as a legitimate deduction of fact from fundamental facts established by competent evidence on the theory that common experience of men tells one that, in such a situation and in the

Pa. 602, 611, 327 A.2d 94, 99 (1974); *McGowan v. Devonshire Hall Apartments,* 278 Pa.Super. 229, 237, 420 A.2d 514, 518 (1980). In *Gilbert, supra,* the Pennsylvania Supreme Court abandoned the multiple doctrines formerly employed in Pennsylvania for circumstantial proof of negligence [18] and in their stead adopted the approach articulated in Restatement (Second) of Torts, § 328D. That section provides in pertinent part:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

It is only when each of the three conditions is satisfied that an inference of negligence can be drawn from the occurrence of an injurious event. *Pennsylvania Liquor Control Bd. v. City of Philadelphia,* 17 Commw.Ct. 629, 632, 333 A.2d 497, 500 (1975).

As dictated by § 328D, the applicability of the doctrine depends, in the first instance, upon whether the event causing damages ordinarily does not occur in the absence of negligence. *Higginbotham v. Mobil Oil Corp.,* 545 F.2d 422, 429 (5th Cir.), cert. denied, 434 U.S. 830, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977). Since a fire of unknown origin is one of many accidents that as a matter of common knowledge frequently occur without anyone's fault,[19] the rule of res ipsa loquitur is generally given limited application in such cases.[20] *See, e.g., Appalachian Insurance Company v. Knutson,* 242 F.Supp. 226, 235 (D.C.W.D.Mo.1965), aff'd, 358 F.2d 679 (3rd Cir. 1966); *Menth v. Breeze Corp.,* 4 N.J. 428, 435, 73 A.2d 183, 186 (1950); Annot., 8 A.L.R.3d 974 (1966) and cases cited therein. While the Pennsylvania Supreme Court has not specifically addressed this issue,[21] I believe the correct view is that the application of res ipsa in fire cases should be predicated upon the particular facts and circumstances appearing in the individual case; not upon the mere occurrence of a fire. See *Menth v. Breeze Corp.,* 4 N.J. 428, 436, 73 A.2d 183, 186 (1950); *Foerster v. Fischbach-Moore, Inc.,* 178 N.W.2d 258, 263 (N.D.1970); *Wengers, Inc. v. F.W. Woolworth Co.,* 26 Cumb. L.J. 93, 96 (C.C.P.1976). Accordingly, only if facts are presented from which it is reasonable to conclude that a particular fire is an event that would not normally occur in the absence of negligence, is the initial re-

ordinary course of events, injury or damage complained of by plaintiff would not have occurred in absence of negligence on part of defendant." *Id.* at 661–62. The doctrine enables a plaintiff to get his case to the jury upon inference when direct evidence of negligence is unavailable.

**18.** See, e.g., *Izzi v. Philadelphia Transp. Co.,* 412 Pa. 559, 195 A.2d 784 (1963); *Ambrose v. Western Maryland Ry. Co.,* 368 Pa. 1, 81 A.2d 895 (1951); and cases cited therein.

**19.** W. Prosser, Handbook of the Law of Torts, § 39, at 216 (4th ed. 1971); *Joseph T. Ryerson & Son., Inc. v. H.A. Crane & Brother, Inc.,* 417 F.2d 1263, 1266 (3rd Cir. 1969).

**20.** "If the rule of res ipsa loquitur were to be applied generally in cases of fires, it would be obvious that the owner or tenant in control of a building in which a fire started would in a great many cases be held to a calamitous liability for a non-negligent occurrence." *Highland Golf Club v. Sinclair Refining Co.,* 59 F.Supp. 911, 919–20 (D.C.N.D. Iowa 1945).

**21.** It should be noted that res ipsa loquitur's functional counterparts, see text accompanying note 13 *supra,* have been applied in fire cases by the Pennsylvania courts. *See, e.g., Marazzo v. Scranton Nehi Bottling Co.,* 422 Pa. 518, 223 A.2d 17 (1966); *Connor v. Hawk,* 387 Pa. 480, 128 A.2d 566 (1957); *Shafer v. Lacock, Hawthorn & Co.,* 168 Pa. 497, 32 A. 44 (1895); *Nationwide Insurance Co. v. Mezza,* 233 Pa.Super. 244, 334 A.2d 697 (1975). *But see, Githens, Rexsamer & Co. v. Wildstein,* 428 Pa. 201, 236 A.2d 792 (1968) (holding that the exclusive control doctrine was inapplicable on the facts of this fire case). *See also, Ford v. Jeffries,* 474 Pa. 588, 602, 379 A.2d 111, 118 (1977) (Nix, J., concurring) in which Justice Nix suggested that Restatement (Second) of Torts § 328D could appropriately be applied in a fire case.

quirement for application of res ipsa loquitur satisfied.

The record in the instant case establishes that plaintiff has failed to satisfy this threshold requirement. Rather than establishing that the instant fire was a kind which ordinarily would not occur absent negligence, competent evidence was adduced at trial suggesting that the fire could have been equally attributable to arson.[22] Tr. 110. Where, as here, it is established that one of several sources might have caused the fire, the purposes underlying the doctrine would not be furthered by its application. To permit the jury to infer negligence by the type of circumstantial evidence envisioned by § 328D where two inconsistent and equally likely causes exist, conflicts with the core value of the rule which allows the inference of negligence to be drawn where the probabilities favor that deduction. I find support for this reasoning in several Pennsylvania cases. In *Norris v. Philadelphia Electric Company*, 334 Pa. 161, 5 A.2d 114 (1939), the Pennsylvania Supreme Court, in declining to apply the res ipsa loquitur rule, stated:

It is essential that it shall appear that the transaction in which the accident occurred was in the exclusive management of the defendant, and all the elements of the occurrence within his control, and that the result was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than negligence. *If there is any other cause apparent to which the injury may with equal fairness be attributed,*

*the inference of negligence cannot be drawn.*

*Id.* at 165, 5 A.2d at 116. (emphasis in original). *See also, Clark v. Pennsylvania Power and Light Co.,* 336 Pa. 75, 80, 6 A.2d 892, 894 (1939) (quoting *Norris*). *Accord, Appalachian Insurance Company v. Knutson,* 242 F.Supp. 226, 227, 235 (D.C.W.D.Mo. 1965), *aff'd,* 358 F.2d 679 (8th Cir. 1966); *The President Wilson,* 5 F.Supp. 684, 686 (D.C.Cal.1933); *Connecticut Fire Insurance Company v. Lavergne,* 224 So.2d 479, 483 (La.App.1969) (quoting *Morales v. Employers' Liability Assur. Corporation,* 202 La. 755, 12 So.2d 804 (1943) ("[w]hen it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it cannot be invoked"). Pennsylvania's adoption of the Restatement's language in *Gilbert* does not undermine the precedential value of the foregoing cases since section 328(D)(1)(a) in essence adopts this strict preliminary requirement for application of the doctrine.

I am not unmindful that the plaintiff need not eliminate with certainty all other possible causes and inferences. All that is required is evidence from which reasonable men could conclude that negligence is the more probable explanation as the cause of the injurious event. Restatement (Second) of Torts, § 328D, Comment e; W. Prosser, Handbook of the Law of Torts § 39, at 218 (4th ed. 1971). Where the balance of probabilities, however, does not point to negligence, res ipsa loquitur does not apply. Prosser, *supra* § 39 at 218; *DaVinci Creations, Inc. v. Nu-Frame Co., Inc.,* 418 A.2d 851, 853 (R.I.1980).[23] The

---

22. In *Wengers, Inc. v. F.W. Woolworth Co.,* 26 Cumb.L.J. 93, 96 (C.C.P.1976), the plaintiff relied on res ipsa loquitur in proving its case. The plaintiff's theory, as in the instant case, was premised on careless smoking. In determining whether plaintiff satisfied the initial requirement for application of the doctrine, the court examined the circumstances surrounding the fire in question, and found evidence pointing to discarded cigarettes as the cause. More importantly, the court emphasized that no evidence of arson or vandalism or of any particular cause of the fire, other than the negligence theory adopted by plaintiff, was presented at trial. The court concluded that "[o]n these

facts it is a reasonable conclusion that this fire is an event that would not normally occur in the absence of negligence." *Id.* at 96. Presumably, had there been evidence of arson or vandalism, it would have been incongruous to conclude that the fire was of a type that would not normally occur absent negligence. This is precisely the situation in the instant case.

23. In *DaVinci,* plaintiff sued in negligence for property damage and loss of profits incurred as a result of a fire that allegedly originated on the premises of the defendant. Plaintiff relied, inter alia, on res ipsa loquitur and at the close of all the evidence a verdict was directed in favor of the defendants on this count. In upholding

plaintiff failed to meet this burden in the case *sub judice*. Nevertheless, my charge incorporated the general explanation of circumstantial evidence, and left the jury free to conclude that the accident resulted from either the negligence or intentional conduct of the defendant. This they chose not to do. After reviewing the record in the instant case, I remain convinced that the balance of probabilities did not favor negligence and that the charge considered in *toto* was fair.[24] Thus, the plaintiff's motion for a new trial on this ground is denied.

The foregoing constitutes my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

the trial court's decision, the Rhode Island Supreme Court held that plaintiff failed to demonstrate that, to a reasonable probability, the fire would not have occurred absent negligence. The court concluded, therefore, that the first element of the res ipsa doctrine had not been satisfied. The court noted that expert testimony suggested the possible manner in which the fire took place, but that other causes were also possible. In such a case, the court stated, the factfinder can only speculate about the existence of negligence. Similarly, the conflicting expert testimony in the instant case clearly established two *equally* probable causes for the fire. While such evidence is sufficient to submit the case to the jury, it is an inappropriate situation to invoke the res ipsa loquitur doctrine. *See Marazzo v. Scranton Nehi Bottling Co.*, 422 Pa. 518, 527, 223 A.2d 17, 23 (1966) (inference to be drawn from evidence in question for jury); *Smith v. Bell Telephone Co. of Pennsylvania*, 397 Pa. 134, 138–39, 153 A.2d

477, 480 (1959) (facts are for jury in any case whether based on direct or circumstantial evidence where a reasonable conclusion could be drawn placing liability on defendant). *But see, Norris v. Philadelphia Electric Company*, 334 Pa. 161, 165, 5 A.2d 114, 116 (1939) (res ipsa loquitur inapplicable where other causes for the injury may with equal fairness be attributed).

24. Plaintiff's argument that all probable causes for the fire—careless smoking and arson—pointed to the defendant as the responsible cause is misdirected. This argument focuses on the second inference of Section 328(D)—i.e., elimination of other responsible causes. Its function is to assure that the inference of negligence can be drawn against the *particular defendant*. It does not, however, permit the inference of negligence as the most probable cause of the event.